IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| **CHASITY SPURLOCK et al.,** | |
| **Plaintiff,** | |
| **vs.** | Civil Action No. 4:19-cv-219-AT |
| **COMPLETE CASH HOLDINGS, LLC et al.,** | |
| **Defendant.** | |

---

### FIRST AMENDED COMPLAINT

---

Plaintiffs Chasity Spurlock, Holly Elliott, and Tiffany Thomas bring this

Complaint against Defendants Complete Cash Holdings, LLC; Relogio, LLC;

Agora Notus, LLC, and Lisa Webster, showing the Court as follows:

### INTRODUCTION

1.     This is an FLSA overtime case in which Plaintiffs were employed by

Defendants as "managers", "co-managers" or "floating managers" at their

Complete Cash Discount Title Pawn store locations which were owned

and/or operated by Defendants.

2.     Throughout their employment, Plaintiffs always worked for entities doing

business as Complete Cash Discount Title Pawn, however the actual entities

that own and/or operate Complete Cash Discount Title Pawn continually shifted and changed. As Plaintiffs noted in their original Complaint, they anticipated the need to file an amended complaint after identifying additional entities that should be named as Defendants.

3.  Defendants misclassified Plaintiffs as exempt from the overtime pay provisions of the FLSA, truncated Plaintiffs' hours, and failed to compensate them for marketing work they performed on behalf of and for the benefit of Defendants as a result. Defendants failed to pay Plaintiffs at one-and-one-half times their regular hourly rate for all hours worked in excess of forty hours in each workweek.

**JURISDICTION AND VENUE**

4.  This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, 29 U.S.C. § 216(b) and 28 U. S. C. § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

5.  Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Defendants' store locations in which Plaintiffs worked are located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## The Parties

6.   Plaintiff Spurlock is a natural person who resides in Walker County, Georgia.

7.   Plaintiff Elliott is a natural person who resides in Catoosa County, Georgia.

8.   Plaintiff Thomas is a natural person who resides in Catoosa County, Georgia.

9.   Defendants employed Plaintiff Spurlock as a Floating Manager at its stores located in the "Georgia Line District" which consisted of Complete Cash Discount Title Pawn stores located in Summerville, Trion, Lafayette, Trenton, Fort Oglethorpe, Ringgold and Rossville, Georgia.

10.   Defendants employed Plaintiff Elliott as a Manager at their Complete Cash Discount Title Pawn store located in Fort Oglethorpe, Georgia.

11.   Defendants employed Plaintiff Thomas as a Manager at their Complete Cash Discount Title Pawn store located in Fort Oglethorpe, Georgia location and as a Co-Manager at their Rossville, Georgia location.

12.   Complete Cash Holdings is a Domestic Limited Liability Company organized under the laws of the State of Georgia.

13.   Complete Cash Holdings is subject to the personal jurisdiction of this Court.

14.   Complete Cash Holdings has previously been served with process in this action.

15. Defendant Relogio is a Domestic Limited Liability Company organized under the laws of the State of Georgia.

16. Relogio is subject to the personal jurisdiction of this Court.

17. Relogio has previously been served with process in this action.

18. Agora Notus is a Domestic Limited Liability Company organized under the laws of the State of Georgia.

19. Agora Notus is subject to the personal jurisdiction of this Court.

20. Agora Notus may be served with process via its registered agent, M. Shane Lovingood, S., Esq., CPA, at 1203 Broadrick Dr., Ste. 100, Dalton, GA, 30720.

21. Webster is a natural person who resides in Walker County, Georgia.

22. Webster is subject to the personal jurisdiction of this Court.

23. Webster has previously been served with process in this action.

**Employment Relationship**

24. Spurlock was employed at Complete Cash Discount Title Pawn from approximately August 21, 2017 through September 28, 2018.

25. Throughout Spurlock's employment, Complete Cash Holdings, LLC; Relogio, LLC; and Agora Notus, LLC, were her "employers" within the meaning of 29 U.S.C. §203(d).

26.  Elliott was employed at Complete Cash Discount Title Pawn from
     approximately September 2017 through October 31, 2018.

27.  Throughout Elliott's employment, Complete Cash Holdings, LLC; Relogio,
     LLC; and Agora Notus, LLC, were her "employers" within the meaning of
     29 U.S.C. § 203(d).

28.  Thomas was employed at Complete Cash Discount Title Pawn from
     approximately October 2016 through November 27, 2018.

29.  Throughout Thomas's employment, Complete Cash Holdings, LLC, and
     Relogio, LLC, were her "employers" within the meaning of § 29 U.S.C.
     §203(d).

30.  Beginning in early 2017 and continuing through the end of her employment,
     Agora Notus, LLC, was Thomas's "employer" within the meaning of § 29
     U.S.C. §203(d).

**Individual Employer**

31.  Throughout Plaintiffs' employment, Webster held the position of District
     Manager at Complete Cash Discount Title Pawn.

32.  According to Complete Cash Discount Title Pawn's website, Webster is
     responsible for "achieving all district performance expectations, conducting
     store audits, interviewing and hiring, facilitating coaching opportunities and

all district associate training, scheduling, resolving customer concerns,

thoroughly training assistant district managers, and communicating to upper

management".

33. Webster was involved in the day-to-day operations of the Complete Cash

Discount Title Pawn store locations where Plaintiffs worked.

34. Throughout Plaintiffs' employment, Webster was a Manager or supervisor

for Complete Cash Discount Title Pawn where Plaintiffs worked.

35. Throughout Plaintiffs' employment, Webster exercised operational control

over the work activities of Plaintiffs.

36. Throughout Plaintiffs' employment, Webster was vested with supervisory

authority over Plaintiffs.

37. Throughout Plaintiffs' employment, Webster scheduled Plaintiffs' working

hours or supervised the scheduling of Plaintiffs' working hours.

38. Throughout Plaintiffs' employment, Webster had authority to access

Defendants' time keeping system to make changes to employees' time

entries.

39. Throughout Plaintiffs' employment, Webster did access Defendants' time

keeping system to make changes to employees' time entries.

40.     Throughout Plaintiffs' employment, Webster truncated the actual hours

        Plaintiffs worked during many work weeks to reflect that they worked less

        time than they actually worked.

41.     Throughout Plaintiffs' employment, Webster exercised authority over

        Plaintiffs' compensation.

42.     Throughout Plaintiffs' employment, Webster exercised authority over

        Plaintiffs' bonuses.

43.     Throughout Plaintiffs' employment, Webster was Plaintiffs' "employer"

        within the meaning of 29 U.S.C. § 203(d).

**FLSA INDIVIDUAL COVERAGE**

44.     Throughout her employment at Complete Cash Discount Title Pawn,

        Spurlock was "engaged in commerce" within the meaning of 29 U.S.C.

        § 206(a) and 29 U.S.C. § 207(a)(1) because she regularly and necessarily

        used the instrumentalities of interstate commerce.

45.     Throughout her employment at Complete Cash Discount Title Pawn, Elliott

        was "engaged in commerce" within the meaning of 29 U.S.C. § 206(a) and

        29 U.S.C. § 207(a)(1) because she regularly and necessarily used the

        instrumentalities of interstate commerce.

46. Throughout her employment at Complete Cash Discount Title Pawn, Thomas was "engaged in commerce" within the meaning of 29 U.S.C. § 206(a) and 29 U.S.C. § 207(a)(1) because she regularly and necessarily used the instrumentalities of interstate commerce.

**FLSA ENTERPRISE COVERAGE**

47. Complete Cash Discount Title Pawn has multiple stores located throughout the State of Georgia.

48. Complete Cash Discount Title Pawn's website states that Complete Cash has 50 store locations throughout the State of Georgia.

***Complete Cash Holdings***

49. Throughout Plaintiffs' employment, Complete Cash Holdings owned and/or operated one or more Complete Cash Discount Title Pawn store locations where Plaintiffs worked.

50. During 2016, Complete Cash Holdings had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

51. During 2017, Complete Cash Holdings had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

52. During 2018, Complete Cash Holdings had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

53.  During 2019, Complete Cash Holdings had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

54.  During 2016, Complete Cash Holdings had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

55.  During 2017, Complete Cash Holdings had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

56.  During 2018, Complete Cash Holdings had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

57.  During 2019, Complete Cash Holdings had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

58.     During 2016, Complete Cash Holdings had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

59.     During 2017, Complete Cash Holdings had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

60.     During 2018, Complete Cash Holdings had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

61.     During 2019, Complete Cash Holdings had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

62.     Throughout Plaintiffs' employment, Complete Cash Holdings was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in 29 U.S.C. §§ 206(a) and 207(a)(1).

*Relogio*

63.  Throughout Plaintiffs' employment, Relogio owned and/or operated one or more Complete Cash Discount Title Pawn store locations where Plaintiffs worked.

64.  During 2016, Relogio had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

65.  During 2017, Relogio had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

66.  During 2018, Relogio had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

67.  During 2019, Relogio had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

68.  During 2016, Relogio had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

69.  During 2017, Relogio had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or

produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

70. During 2018, Relogio had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

71. During 2019, Relogio had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

72. During 2016, Relogio had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

73. During 2017, Relogio had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

74. During 2018, Relogio had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

75. During 2019, Relogio had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

76. Throughout Plaintiffs' employment, Relogio was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. §§ 206(a) and 207(a)(1).

**_Agora Notus, LLC_**

77. Beginning in early 2017 and through the end of Plaintiffs' employment, Agora Notus owned and/or operated one or more Complete Cash Discount Title Pawn store locations where Plaintiffs worked.

78. Beginning in early 2017 and through the end of Plaintiffs' employment, Agora Notus had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

79. Beginning in early 2017 and through the end of Plaintiffs' employment, Agora Notus had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

80. Beginning in early 2017 and through the end of Plaintiffs' employment, Agora Notus had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

81.   Beginning in early 2017 and through the end of Plaintiffs' employment, Agora Notus had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

82.   Beginning in early 2017 and through the end of Plaintiffs' employment, Agora Notus had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

83.   Beginning in early 2017 and through the end of Plaintiffs' employment, Agora Notus had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

84.   Beginning in early 2017 and through the end of Plaintiffs' employment, Agora Notus had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

85.   Beginning in early 2017 and through the end of Plaintiffs' employment, Agora Notus had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

86.   Beginning in early 2017 and through the end of Plaintiffs' employment,
Agora Notus had an annual gross volume of sales made or business done of
not less than $500,000 (exclusive of excise taxes at the retail level that are
separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

87.   Beginning in early 2017 and through the end of Plaintiffs' employment,
Agora Notus had an annual gross volume of sales made or business done of
not less than $500,000 (exclusive of excise taxes at the retail level that are
separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

88.   Beginning in early 2017 and through the end of Plaintiffs' employment,
Agora Notus had an annual gross volume of sales made or business done of
not less than $500,000 (exclusive of excise taxes at the retail level that are
separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

89.   Beginning in early 2017 and through the end of Plaintiffs' employment,
Agora Notus had an annual gross volume of sales made or business done of
not less than $500,000 (exclusive of excise taxes at the retail level that are
separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

90.   Beginning in early 2017 and through the end of Plaintiffs' employment,
Agora Notus was an "enterprise engaged in commerce or in the production

of goods for commerce" within the meaning of 29 U.S.C. §§ 206(a) and 207(a)(1).

**SINGLE ENTERPRISE**

91.   At all relevant times, Complete Cash Holdings, LLC; Relogio, LLC; Agora Notus, LLC, constituted a single "enterprise" within the meaning of 29 U.S.C. § 203(s)(1) because they perform related activities through a unified operation of common control for a common business purpose.

92.   Specifically, Relogio performed repossessions for Complete Cash on delinquent accounts.

93.   Beginning in early 2017, Agora Notus took over the operation of one or more Complete Cash Discount Title Pawn retail locations.

94.   Additionally, at various times Complete Cash Discount Title Pawn retail locations operated under business licenses issued to Complete Cash, Agora Notus, and Relogio.

95.   At all relevant times, Complete Cash, Relogio, and Agora Notus were operated by Webster under unified control for a common business purpose.

**FLSA EXEMPTIONS**

96.     Throughout Plaintiffs' employment, Plaintiffs' primary duties did not
        involve the exercise of independent judgment or discretion regarding
        significant business decisions on behalf of Defendants.

97.     Throughout Plaintiffs' employment, Plaintiffs did not supervise two or more
        full time employees on behalf Defendants.

98.     Throughout Plaintiffs' employment, Plaintiffs' primary duties consisted of
        assisting Defendants' customers with pawn transactions in Complete Cash
        Discount Title Pawn stores owned and/or operated by Defendants.

99.     Throughout Plaintiffs' employment, Plaintiffs did not utilize any special
        skills in the course of their work for Defendants.

100.    Throughout Plaintiffs' employment, Defendants did not require any formal
        training, degree, or certificate to allow Plaintiffs to perform their duties for
        Defendants.

101.    Throughout Plaintiffs' employment, Plaintiffs did not possess any
        specialized license or certification that they utilized to perform services on
        behalf of Defendants.

102.    Throughout Plaintiffs' employment, Defendants required Plaintiffs to
        comply with verbal instructions about how they were to perform their duties.

103.   Throughout Plaintiffs' employment, Defendants provided instruction to Plaintiffs about how they should perform their job duties for Defendants.

104.   Throughout Plaintiffs' employment, if a customer loan was more than $750.00, Plaintiffs were required to get approval from either the Assistant District Manager, District Manager, Regional Manager or Operational Manager.

105.   Throughout Plaintiffs' employment, if a customer's interest rate was below 15%, Plaintiffs were required to get approval from either the Assistant District Manager, District Manager, Regional Manager or Operational Manager.

106.   Throughout Plaintiffs' employment, to extend a customer's pawn longer than 12 months, Plaintiffs were required to get approval from either the Assistant District Manager, District Manager, Regional Manager or Operational Manager.

107.   Throughout Plaintiffs' employment, if a customer already had an existing pawn and was attempting to obtain a new pawn, Plaintiffs were required to get approval from either the Assistant District Manager, District Manager, Regional Manager or Operational Manager.

108.  Throughout Plaintiffs' employment, if a customer had previously missed a payment or previously attempted to cash a check with insufficient funds, Plaintiffs were required to get approval from either the Assistant District Manager, District Manager, Regional Manager or Operational Manager for any new transactions.

109.  Throughout Plaintiffs' employment, Plaintiffs were required to get approval for all "buy outs" when they obtained or bought out a title pawn from another company from either the Assistant District Manager, District Manager, Regional Manager or Operational Manager.

110.  Throughout Plaintiffs' employment, Defendants determined the hours and schedule which they required Plaintiffs to work.

111.  Throughout Plaintiffs' employment, Defendants supervised Plaintiffs.

112.  Throughout Plaintiffs' employment, if any Plaintiff was absent from work for any reason and did not have PTO available, Defendants compensated her at an hourly rate for her hours worked.

113.  Throughout Plaintiffs' employment, Plaintiffs were not compensated on a bona fide salary basis.

114.  Throughout Plaintiffs' employment, Defendants did not employ Plaintiffs in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213(a).

115.  Throughout Plaintiffs' employment, Defendants did not employ Plaintiffs in a bona fide professional capacity within the meaning of 29 USC § 213(a).

116.  Throughout Plaintiffs' employment, Defendants did not employ Plaintiffs in a bona fide administrative capacity within the meaning of 29 USC § 213(a).

117.  Throughout Plaintiffs' employment, Defendants did not employ Plaintiffs in a bona fide executive capacity within the meaning of 29 USC § 213(a).

118.  Throughout Plaintiffs' employment, Plaintiffs were not exempt from the FLSA maximum hours provisions by reason of any exemption.

**General factual allegations**

*As to all Plaintiffs*

119.  Throughout their respective employment periods, Plaintiffs regularly worked 6 days per week.

120.  Throughout their respective employment periods, Plaintiffs were scheduled to work Monday through Saturday during most work weeks.

121.  Throughout their respective employment periods, Plaintiffs were required to clock-in each morning at 9:20 a.m.

122.   Throughout their respective employment periods, Plaintiffs worked from
       9:20 a.m. until 6:00 p.m. on Monday, Tuesday, Thursday and Friday of each
       work week.

123.   Throughout their respective employment periods, Plaintiffs worked from
       9:20 a.m. until 2:00 p.m. on Wednesday and Saturday of each work week.

124.   Throughout their respective employment periods, Plaintiffs worked from
       9:20 a.m. until 2:00 p.m. on Wednesday and Saturday of each work week.

125.   Throughout their respective employment periods, Plaintiffs did not work on
       Sundays on behalf of Defendants.

126.   Throughout their respective employment periods, Plaintiffs regularly worked
       44-46 hours in Defendants' retail locations during most, if not all, work
       weeks.

127.   Throughout their respective employment periods, in addition to the work
       Plaintiffs performed on behalf of Defendants at their retail locations,
       Plaintiffs were required to perform marketing on behalf of Defendants after
       hours.

128.   Throughout their respective employment periods, Plaintiffs were required to
       perform marketing on behalf of Defendants on Wednesdays and Saturdays.

129. Throughout their respective employment periods, Plaintiffs performed marketing duties on behalf of Defendants on Wednesdays from 2:00 p.m. until 6:00 p.m. during most, if not all, work weeks.

130. Throughout their respective employment periods, Plaintiffs performed marketing duties on behalf of Defendants on Saturdays from 2:00 p.m. until 5:00 p.m. during most, if not all, work weeks.

131. Throughout their respective employment periods, Plaintiffs were also required to perform marketing duties at special events such as festivals, parades, rodeos throughout the year.

132. Throughout their respective employment periods, Plaintiffs were required to send District Manager Lisa Webster ten (10) photographs to show their marketing efforts when they were out of their respective stores marketing on behalf of Defendants.

133. Throughout their respective employment periods, Plaintiffs normally worked 7 hours or more during most work weeks performing marketing duties.

134. Throughout their respective employment periods, Plaintiffs did not receive compensation for any of the time performing marketing duties on behalf of Defendants outside of their store locations.

135.  Throughout their respective employment periods, on the last day of each month, Plaintiffs were required to stay after regular store hours to call Defendants' customers to pay on accounts so that their collection percentages would be higher by the end of each month.

136.  Throughout their respective employment periods, on the last day of each month, Plaintiffs often worked until 8:00 p.m. or 9:00 p.m.

137.  Throughout Plaintiffs' respective employment periods, District Manager Lisa Webster changed the actual time that Plaintiffs worked during the last day of each month to comport with store hours resulting in truncating of their actual hours worked.

138.  Throughout their respective employment periods, Plaintiffs regularly worked 46-48 hours during the last week of each month.

139.  Throughout their respective employment periods, Plaintiffs were not compensated for the additional hours they worked on the last day of each month.

140.  Throughout Plaintiffs' respective employment periods, Defendants knew or should have known that Plaintiffs were non-exempt employees within the meaning of the FLSA and, thus, should have been paid in compliance with the FLSA's maximum hour requirements.

141.   Throughout Plaintiffs' respective employment periods, Defendants failed to compensate Plaintiffs at one-and-one-half times their regular hourly rates for all hours worked in excess of forty (40) hours per workweek.

142.   Upon information and belief, in failing to compensate Plaintiffs as required by the FLSA, Defendants did not rely in good faith on any letter ruling from the Department of Labor indicating that such practice was permitted under the FLSA.

143.   Upon information and belief, in failing to compensate Plaintiffs as required by the FLSA, Defendants did not rely in good faith on any legal advice indicating that such practice was permitted under the FLSA.

144.   Throughout Plaintiffs' respective employment periods, Defendants willfully failed to pay Plaintiffs at one-and-one-half times their regular hourly rates for all hours worked in excess of forty (40) hours per workweek.

## COUNT I

**FAILURE TO PAY OVERTIME WAGES PURSUANT TO 29 U.S.C. § 207(A) ASSERTED BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS**

145.   Throughout their respective employment periods, Plaintiffs were employees covered by the FLSA and entitled to the maximum hour protections set forth in 29 U.S.C. § 207(a).

146.  Throughout their respective employment periods, Plaintiffs regularly worked in excess of forty (40) hours each week.

147.  Throughout Plaintiffs' respective employment periods, Defendants failed to compensate Plaintiffs at one-and-one-half times their regular hourly rates for work in excess of forty (40) hours worked per workweek.

148.  Defendants' failure to comply with the FLSA's maximum hour provisions was done willfully within the meaning of 29 U.S.C. § 255.

149.  Plaintiffs are entitled to payment of all due but unpaid overtime compensation in an amount to be determined at trial.

150.  As a result of the willful underpayment of overtime compensation as alleged above, Plaintiffs are entitled to liquidated damages in an amount equal to their unpaid overtime wages pursuant 29 U.S.C. § 216(b).

151.  As a result of the underpayment of overtime compensation as alleged above, Plaintiffs are entitled to their litigation costs, including their reasonable attorney's fees, in accordance with 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiffs request that this Court:

1.  Take jurisdiction of this matter;

2.  Grant a trial by jury as to all issues so triable;

3.      Issue an order holding each of the Defendants to be Plaintiffs' "employer" as that term is defined under the FLSA;

4.      Issue an order holding that each Plaintiff was covered by the overtime provisions of the FLSA and that Defendants have failed to comply with the requirements of the FLSA;

5.      Issue an order holding that Defendants' violations of the overtime wage provisions of the FLSA were willful;

6.      Award each Plaintiff all unpaid overtime wages at the rate of one-and-one-half times each Plaintiff's regular hourly rate for each hour worked in excess of 40 in each workweek and an equal amount in liquidated damages;

7.      Award Plaintiffs pre-judgment interest on all amounts owed to the extent that liquidated damages are not awarded;

8.      Award Plaintiffs nominal damages;

9.      Award Plaintiffs their costs of litigation, including their reasonable attorney's fees; and

10.     Award any and such other further relief this Court deems just, equitable and proper.

This 9th day of September 2020,

Respectfully submitted,

**DELONG, CALDWELL, BRIDGERS, FITZPATRICK & BENJAMIN, LLC**

_s/ Matthew W. Herrington_

101 Marietta Street
Suite 2650
Atlanta, Georgia 30303
(404) 979-3171
(404) 979-3170 (f)
charlesbridgers@dcbflegal.com
benjamin@dcbflegal.com
matthew.herrington@dcbflegal.com

Charles R. Bridgers
Georgia Bar No. 080791
Mitchell D. Benjamin
Georgia Bar No. 049888
Matthew W. Herrington
Georgia Bar No. 275411

Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| CHASITY SPURLOCK et al., | |
| **Plaintiff,** | |
| **vs.** | Civil Action No. 4:19-cv-219-AT |
| COMPLETE CASH HOLDINGS, LLC et al., | |
| **Defendant.** | |

## CERTIFICATE OF SERVICE

I certify that on this date I caused the foregoing document to be filed with the

Clerk via the Court's CM/ECF system, thereby ensuring electronic service upon all

counsel of record.

Dated: September 9, 2020

> *s/Matthew W. Herrington*
> Matthew W. Herrington
> Georgia Bar No. 275411