IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| **CHASITY SPURLOCK, HOLLY ELLIOTT, and TIFFANY THOMAS,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**COMPLETE CASH HOLDINGS, LLC, RELOGIO, LLC, AGORA NOTUS, LLC, and LISA WEBSTER,**<br><br>**Defendants.** | Civil Action No. 4:19-cv-219-AT |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS OF LITIGATION**

**A.   BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs—all three former employees of a title pawn business—filed this FLSA overtime action on September 24, 2019, alleging that Defendants failed to pay them overtime wages as required by the Fair Labor Standards Act. [Dkt. 1] Initially, the three Plaintiffs filed suit against Defendant Lisa Webster, a "John Doe" defendant, and *four corporate defendants*, all of them allegedly doing business as "Complete Cash Discount Title Pawn." Throughout Plaintiffs' employment, the business entities used to operate the business continually

1

changed,[1] and the business used third parties to issues paychecks, making the proper corporate defendant(s) extremely difficult to determine. From the outset, Plaintiffs noted this difficulty and the likelihood that amendment would be necessary after necessary discovery had been completed. [Dkt. 1, ¶ 2]

Initially Plaintiffs were able to serve only Defendants Complete Cash Holdings, LLC and Relogio, LLC. They answered on December 9, 2019, and simultaneously filed a motion to dismiss, claiming that Plaintiffs had accepted a settlement supervised by the Department of Labor. [Dkt. 16] Plaintiffs responded showing that Defendants had not actually informed them of any DOL settlement when mailing them checks for a small portion of their unpaid overtime [Dkt. 19], and the Court ultimately denied the motion. [Dkt. 48] Meanwhile, Defendants Lisa Webster and Workforce Holdings, LLC, were served, and they filed their answers on February 12 and April 15, 2020. [Dkt. 32, 44]

As the case progressed, Plaintiffs learned that Defendant ADP TotalSource, Inc., was merely a third-party payroll administrator and not Plaintiffs' employer, and thus filed a voluntary dismissal as to that defendant on May 13, 2020. [Dkt. 66] Plaintiffs also confirmed that Defendant Workforce Holdings, LLC, was also a

---

[1] Perhaps the constant changing of business entities has nothing to do with a Department of Labor investigation into overtime violations. Plaintiffs have their doubts.

third-party payroll administrator—despite contentions in the Initial Disclosures of Defendants Complete Cash and Relogio that it was the actual employer—and dismissed that Defendant as well. [Dkt. 76]

During discovery Plaintiffs also discovered that Agora Notus, LLC, had been named as a defendant-employer in another FLSA case filed by employees of Complete Cash. *See Caudill v. Agora Notus, LLC et al.*, 1:20-cv-01246-CAP (N.D. Ga.). After serving numerous Open Record Requests to local government agencies, Plaintiffs were able to confirm that Complete Cash had indeed represented Agora Notus, LLC, as its owner. Plaintiffs then proceeded to file an Amended Complaint adding that company as Defendant. [Dkt. 82]

In discovery, Plaintiffs served nine sets of discovery requests: one set of interrogatories on each of five Defendants, one set of requests for admission (to all Defendants) by each Plaintiff, and one set of requests for production of documents (to all Defendants).[2] Plaintiffs' requests for admission were largely identical—give or take 10 requests out of 275—except that the individual requests related to each Plaintiff specifically. This was necessary because Plaintiffs worked at different locations and because the entities that operated the locations—as well as the

---

[2] Plaintiffs are happy to post all discovery requests and responses thereto on the docket upon request, or if a dispute arises regarding their content, but decline to do so now for the sake of economy.

entities that issued paychecks—changed over time. Thus, the requests for admissions were the most efficient means of determining which Defendant employed which Plaintiff and when, as well as any factual details that Defendants claimed differentiated the three Plaintiffs.

A large number of requests for admission was also necessary because of the sheer number of defenses that Defendants raised. In their Answers to Plaintiffs' Amended Complaint, the remaining Defendants continued to explicitly assert *all three* of the FLSA's white collar exemptions, as well as refused to admit that Plaintiffs were not exempt under the outside sales exemption. [Dkt. 85, 86, 87, 88 at pg. 2 and at ¶ 117] Because each of these defenses are very complex with numerous factors mandated by the governing regulations, large numbers of requests for admissions were necessary to pin down exactly what Defendants' theories of each of these affirmative defenses actually were.

Defendants Complete Cash Holdings, Relogio, and Webster each served a set of interrogatories on each the three Plaintiffs, plus set of requests for production on each of the Plaintiffs, for a total of 12 sets of discovery that Plaintiffs' counsel had to draft responses. Initial drafting of discovery responses was handled primarily by senior paralegal Jessica Sorrenti. As explained in Ms. Sorrenti's attached Declaration, she spent several hours on the phone with each client in order to

provide the requested discovery responses and to identify responsive documents in the Plaintiffs' possession. Due to the Plaintiffs' relative lack of sophistication, it took several rounds of discussions plus numerous written communications to obtain all the requested information and process the documents produced.

On September 16, 2020, Plaintiffs' counsel reached out to Defendants' counsel about scheduling depositions prior to the close of discovery. On September 30, 2020, Defendants had still not provided dates for the requested depositions, and instead Defendants' counsel requested a settlement demand.

The Parties negotiated over an extended period and ultimately resolved Plaintiffs' claims for approximately 75% of Plaintiffs' own high-end estimates, leaving the amount of attorney's fees and costs to be determined by the Court. Immediately after Plaintiffs' counsel authorized filing the final draft of the Parties' Joint Motion for Settlement Approval, Defendants' served a Rule 68 offer of judgment on Plaintiffs, purporting to offer judgment only as to fees and costs and not as to the back wage portions of Plaintiffs' claims. Defendants did this despite the Parties' executed settlement agreement explicitly calling for the Parties to each bear their own costs and fees other than those awarded by the Court to Plaintiffs. After Plaintiffs performed legal research to try to make sense of the procedural and legal nightmare created by Defendants' improper Rule 68 offer, and after the Court

holded a status conference, Defendants withdrew their Rule 68 offer, the Parties filed their Joint Motion for Settlement Approval, and the Parties briefly continued to negotiate fees. Unable to reach an agreement on fees and costs, Plaintiffs have moved forward with the present fee petition.

**B.    ARGUMENT AND CITATIONS OF AUTHORITY**

    **1.    Legal Standard for an Award of Attorney's Fees and Costs**

The Court faces four questions in making an award of attorneys' fees and costs. First, is Plaintiff a "prevailing plaintiff" entitled to recover her fees and costs? Second, whether Plaintiff has documented the proper amount of hours and hourly rates by submitting evidence supporting the hours worked and the rates claimed. Third, whether Defendants have demonstrated grounds for questioning the hours or rates. And Fourth, whether an upward or downward adjustment to the lodestar is appropriate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The first question need not be examined in depth because the Parties have stipulated that Plaintiff is a prevailing party and entitled to a reasonable fee. Dkt. 97-2 (Settlement Agreement), pg. 1 ("Defendants have agreed that the issue of Plaintiffs' reasonable attorneys' fees will be resolved in the future either through negotiation or upon motion to the Court based on Plaintiffs' status as a prevailing party in an FLSA claim"). Furthermore, because Plaintiffs have recovered

approximately 75% of their own high-end estimates of their damages [Dkt. 97-1, pg. 3], Plaintiffs have unquestionably "prevailed" in this litigation. *See also Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1167 (S.D. Fla. 2003) (citing *American Disability Assoc. v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002) (a court's approval of a settlement is a judicially sanctioned change in the legal relationship of the parties, thereby triggering entitlement to fees and costs as a prevailing plaintiff)).

As to the third and fourth questions, Plaintiffs will address any arguments raised by Defendants in a reply brief. Plaintiffs do not seek an upward adjustment to the lodestar and thus submit no evidence or argument on that issue. Only the second question—whether Plaintiffs have documented the proper amount of hours and hourly rates by submitting evidence supporting the hours worked and the rates claimed—need be addressed at this juncture.

### 2. Determining the Reasonable Fee (Lodestar)

In determining an objective estimate of the value of a lawyer's services, the Court must multiply those hours reasonably expended by a reasonable hourly rate, or compute the "lodestar." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Kenny A. v. Perdue,* 547 F.3d 1319 (11th Cir. 2008). There is a "strong presumption that the lodestar reflects a reasonable sum the attorneys deserve." (internal quotations

omitted) *Bivins v. Wrap It Up, Inc.* 380 Fed. App'x 888, 891 (11th Cir. 2010); *Webster Greenthumb Co. v. Fulton Cty.,* 112 F.2d 1339, 1349 (N.D. Ga. 2000). As detailed below, Plaintiffs' requested attorney's fees are based on their counsel's reasonably incurred time in the case at their respective reasonable hourly rates.

        *a.*      *Determining the Reasonable Rate*

An attorney's "reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quotation omitted).

Here, the rates of Plaintiffs' counsel and their staff are unremarkable for legal professionals with their training and experience and have previously been approved as reasonable in numerous FLSA cases before this Court and in federal district courts across the State of Georgia. Exhibit 1 (Declaration of Charles R. Bridgers), ¶¶ 12–15.

Plaintiffs anticipate that Defendants will argue that Plaintiffs' counsel's rates should be dramatically reduced because this case was filed in the Rome Division,

rather than in Atlanta where Plaintiffs' counsel actually practice. The Court should reject this argument. First, there are virtually no attorneys who represent Plaintiffs in FLSA matters with the experience necessary to handle a case of this complexity. Second, because virtually all of the FLSA litigation occurring in the Rome Division is handled by out-of-division attorneys, if the Court were to rule that those counsel must slash their rates in order to practice in Rome, that ruling would endanger the ability of wronged employees to obtain representation altogether. Seventy miles is not a sufficient justification to slash Plaintiffs' counsel's rates and risk depriving hundreds of thousands of working Georgians of competent counsel.

"The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.' " *ACLU v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Georgia Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir.1994)). "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id.*

As shown in the attached Declaration of Matthew W. Herrington (Exhibit 2), the lack of *competent FLSA attorneys* in the Rome Division is readily apparent. This is not a dig at attorneys in Rome generally, but rather simply an

acknowledgement that there exists no market for *Plaintiff's* attorneys with significant FLSA experience in Rome. Since *at least* January 2015, in only two FLSA cases have attorneys practicing out of the Rome Division represented FLSA plaintiffs in this Court unassisted by out-of-town FLSA specialists. *See* Exhibit 2 (Declaration of Matthew W. Herrington), ¶ 10–12. In only one of those cases— *McCloud v. SECO Architectural Systems, Inc.*, 4:15-cv-105-HLM—was any written discovery propounded (and no depositions taken). And while Dalton Attorney John McCown represents FLSA plaintiffs in this Court quite regularly, he *always* does so with FLSA counsel from Nashville, Tennessee. Exhibit 2, ¶ 10–12 Mr. McCown, on the other hand, does not even represent employment law as one of his practice areas on his firm website. Exhibit 2, ¶ 11.

It is clear that no market for FLSA plaintiffs' attorneys exists in the Rome Division and that out-of-town counsel is a virtually necessity. "Civil rights litigants may not be charged with selecting the nearest and cheapest attorney." *Dowdell v. Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983). Plaintiffs were certainly entitled to more than the nearest barred lawyer with a pulse. The relevant question this Court should ask is whether Plaintiffs could reasonably have located an attorney in this division with more than *de minimis* experience representing FLSA plaintiffs. The answer to that question is unambiguously "no."

Plaintiffs also wish to note that, should the Court adopt Defendant's position, it is likely that individuals living within the Rome Division who are victims of wage theft—or who are victims of employment discrimination—may have an even harder time going forward obtaining competent counsel to represent them. PlainAs shown in the Declaration of Charles Bridgers, a plaintiffs' employment firm simply cannot afford to take on cases where they are guaranteed only a fraction of the rate that they regularly bill at home (a mere hour and a half away, a fact that is even more meaningless in the era of COVID-19). Exhibit 1, ¶ 40.

        b.     *Hours Reasonably Expended*

The hours claimed or spent on a case are "[t]he most useful starting point for determining the amount of a reasonable fee." *Hensley,* 461 U.S. at 433. Counsel must exercise "billing judgment" in determining the hours reasonably expended on the merits (*Id.* at 437), and attorneys should also be compensated for the time reasonably expended in seeking an award of fees from the court. *ACLU v. Barnes,* 168 F.3d 423 (11th Cir. 1999); *Johnson,* 706 F.2d 1205, 1207; *Yule v. Jones,* 766 F. Supp. 2d 1333 (N.D. Ga. 2010).

Counsel's certification that the work itemized has in fact been performed is "entitled to considerable weight on the issue of time required." *Perkins v. Mobile Hous. Bd.,* 847 F.2d 735, 738 (11th Cir. 1988); *Frazier v. Wurth Indus. of N. Am.,*

11

*LLC,* Case No. 1:08-cv-01634-JOF, 2009 U.S. Dist. LEXIS 94444 (N.D. Ga. 2009). Indeed, the Eleventh Circuit has stated that "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and, therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Perkins,* 847 F.2d at 738.

Courts have determined that "compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigating the request for attorney's fees." *Weissinger v. Murray*, Case No. 1:06-CV-1544-TWT, 2009 U.S. Dist. LEXIS 56789, *16 (N.D. Ga. July 2, 2009) (internal citations omitted). The relevant case law is clear that attorney efforts undertaken in drafting a fee petition are compensable under the FLSA, which is commonly referred to as "fees on fees." *See, e.g., Sheet Metal Workers Int'l Ass'n Local 15, AFL-CIO v. Law Fabrication*, LLC, 237 Fed. App'x 543, 550 (11th Cir.2007) ("federal statutory fee-shifting provisions ordinarily authorize fees on

fees"); *Martin v. University of South Alabama,* 911 F.2d 604, 610 (11th Cir. 1990) (same).

Plaintiffs' counsel submit that they did not perform any redundant, excessive, or otherwise unnecessary work in the representation and that all of the work performed was reasonably necessary to properly represent their client. Exhibit 1, ¶ 23. Although multiple attorneys worked on the case, the tasks those attorneys undertook were not duplicative. All of the time incurred by Plaintiffs' attorneys was reasonably incurred and should be awarded (less the amount written off by Plaintiffs' counsel in the exercise of billing judgment). Exhibit 1, ¶ 21.

As detailed in counsel's time records—attached to the Declaration of Charles Bridgers at Attachment A—Partner Mitchell D. Benjamin was responsible for initial client intake, working with senior paralegal Sorrenti to determine the proper Defendants, supervising senior associate attorney Herrington during the motion to dismiss stage, and supervising written discovery.

Partner Charles R. Bridgers was responsible for general case supervision throughout all stages of litigation and for communication with counsel for the (later dismissed) Defendant payroll companies.

Associate Attorney Matthew W. Herrington had primary responsibility for drafting the response to Defendants' Motion to Dismiss, settlement negotiations, and drafting of the present motion.

Paralegal Sarah Toenes was responsible for coordinating service of process and waivers of service, calendaring tasks, drafting interlineated tables of complaints and answers, communication with opposing counsel on scheduling matters, and assisting senior paralegal Sorrenti with document production.

Senior Paralegal Jessica Sorrenti was responsible for drafting of the complaint and amended complaint, drafting outgoing discovery, communicating with clients, drafting Plaintiffs' written discovery responses, and drafting and facilitating open record requests.

In this case, Plaintiff's attorneys and support staff have maintained detailed, accurate and contemporaneous records of time spent working in this matter, which are attached to Exhibit 1 (Declaration of Charles R. Bridgers) as Attachments "A" through "D." Altogether, the prosecution of this case has resulted in attorneys' fees in the amount of $59,429.50, which should be awarded to Plaintiff against Defendants, jointly and severally.

### C. Costs of Litigation

Costs in this case are quite limited and include only a $400 filing fee and $360 for service of process. Exhibit 1, ¶ 7–8. These expenses were reasonably and necessarily incurred in the prosecution of this action and the entire amount—$760.00—should be awarded to Plaintiff pursuant to 29 U.S.C. § 216(b).

### D. CONCLUSION

Based on the foregoing, Plaintiffs request that the Court award them attorney's fees in the amount of $59,429.50 and litigation costs in the amount of $760.00. The undersigned counsel certifies that this brief complies with the type and font requirements enumerated in Local Rule 5.1(C).

Respectfully submitted this 26th day of March 2021,

DELONG, CALDWELL, BRIDGERS,
FITZPATRICK & BENJAMIN, LLC

*s/ Matthew W. Herrington*
Charles R. Bridgers
Georgia Bar No. 080791
Matthew W. Herrington
Georgia Bar No. 275411

101 Marietta Street
Suite 2650
Atlanta, GA 30303
(404) 979-3150
(404) 979-3170 (facsimile)
charlesbridgers@dcbflegal.com
matthew.herrington@dcbflegal.com

Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| **CHASITY SPURLOCK, HOLLY ELLIOTT, and TIFFANY THOMAS,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**COMPLETE CASH HOLDINGS, LLC, RELOGIO, LLC, AGORA NOTUS, LLC, and LISA WEBSTER,**<br><br>**Defendants.** | Civil Action No. 4:19-cv-219-AT |

### CERTIFICATE OF SERVICE

I certify that on this date I caused the foregoing document to be filed with the Clerk via the Court's CM/ECF system, thereby ensuring electronic service upon all counsel of record.

Dated: March 26, 2021

*s/ Matthew W. Herrington*
Matthew W. Herrington
Georgia Bar No. 275411
