**UNITED STATES DISTRICT COURT**
**NORTHER DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| CHASITY SPURLOCK, HOLLY ELLIOTT, and TIFFANY THOMAS, )<br><br>  Plaintiffs, )<br><br>v. )<br><br>COMPLETE CASH HOLDINGS, LLC LLC, RELOGIO, LLC, AGORA NOTUS, LLC, and LISA WEBSTER )<br><br>  Defendants. ) | **CIVIL ACTION FILE**<br><br>**NO.  4:19-CV-00219-AT** |

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS OF LITIGATION**

---

Defendants COMPLETE CASH HOLDINGS, LLC, RELOGIO, LLC, AGORA NOTUS, LLC, and LISA WEBSTER (collectively the "Defendants"), responds in opposition to Plaintiffs' Motion to Motion for Attorney's Fees and Costs of Litigation (Dkt. 99), showing the Court as follows:

## I.   PROCEDURAL HISTORY

The three (3) Plaintiffs filed the instant action on September 24, 2019 wherein their sole claim was to recover for alleged unpaid overtime in violation of the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA"). (See Dkt. 1). Defendants Relogio and CCH both answered and filed a joint motion to dismiss in December of

2019 on the grounds that Plaintiffs acceptance of an alleged settlement check precluded their present claims. (See Dkt. 16). The Court issued its order denying the motion to dismiss on April 28, 2020. (See Dkt. 48). During the discovery period of this case, the Parties only exchanged first discovery requests. No depositions were ever taken in this case.

On January 25, 2021, the Parties filed a Joint Notice of Settlement (Dkt. 92) wherein they notified the Court that they had reached an agreement concerning Plaintiffs' FLSA claims. The amount of this settlement was $21,800.00. In the settlement negotiations, Defendants elected to negotiate Plaintiffs' damages first and separately from Plaintiffs' attorneys fees and costs. Defendants also agreed that Plaintiffs would automatically be considered to be a prevailing party under the FLSA and therefore statutorily entitled to their reasonable attorneys' fees and litigation costs. To reduce expenses to Plaintiffs, Defendants took the primary role in drafting the Motion to Approve Settlement, the brief in support thereof, and the settlement agreement itself.

Following the submission of the Notice of Settlement, the Parties attempted to negotiate a settlement as to Plaintiffs' attorneys' fees and costs. However, they could not reach an agreement. Defendants' made Offer of Judgment as to Plaintiffs' reasonable attorneys' fees and litigation costs is in the gross amount of $32,500.00.

Following a telephone status conference with the Court on March 17, 2021, Defendants withdraw their Rule 68 offer and made a new settlement offer as to Plaintiffs' reasonable attorneys' fees and litigation costs is in the amount of $40,000.00. Plaintiffs then made their first written counteroffer of full costs and $51,120.13 in fees (or 92.5% of $55,265.00). Defendants then rejected this offer, which led to Plaintiffs' Motion to Motion for Attorney's Fees and Costs which is now before the Court.

## II.   ARGUMENT

### A.   Legal Standard for Attorney's Fees & Costs Under The FLSA:

In an action to recover unpaid wages under the Fair Labor Standards Act ("FLSA"),  the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). A prevailing FLSA plaintiff is "automatically entitled to attorneys' fees" and the determination of a reasonable fee is left to the "is left to the sound discretion of the trial judge and will not be set aside absent a clear abuse of discretion." *P&k Rest. Enter., LLC v. Jackson*, 758 Fed. Appx. 844, 850 (11th Cir. 2019).

However, in calculating a reasonable fee, the court must also ensure that plaintiff's counsel is not unjustly enriched through the court's award. See *Id*.

In calculating a reasonable award of attorneys' fees, a district court must first calculate the "lodestar" amount—the number of hours reasonably expended multiplied by a reasonable hourly rate. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The district court is "itself an expert" on the reasonableness of hourly rates and may consider its own knowledge and experience on the topic. Further, the fee applicant must provide the district court with detailed evidence about the reasonable hourly rate, as well as records to show the time spent on the different claims and the general subject matter of the time expenditures set out with particularity.

*Dial HD, Inc. v. ClearOne Commc'ns*, 536 Fed. Appx. 927, 930 (11th Cir. 2013) (internal quotations and citations omitted).

## B.   <u>Reasonable Rates:</u>

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Martinez v. Hernando Cty. Sheriff's Office*, 579 Fed. Appx. 710, 713 (11th Cir. 2014). "The applicant bears the burden of producing satisfactory evidence that his requested rate is reasonable." *Id*. "Satisfactory

evidence at a minimum is more than the affidavit of the attorney performing the work ... [and] must speak to rates actually billed and paid in similar lawsuits." *Eason v. Bridgewater &Assocs., Inc*., 108 F. Supp. 3d 1358, 1364 (N.D. Ga. 2015).

### 1) The Relevant Legal Community is the Rome Division:

Generally, the "relevant legal community," for purposes of determining prevailing market rates, "is that of the place where the case is filed." *Cullens v. Ga Dep't of Transp*., 29 F.3d 1489, 1494 (11th Cir. 1994). The Court, however, may "consider a different legal market if it appears unlikely that there would be any attorneys in the local market who would be willing to take the case and who would possess sufficient expertise in the area of law involved." *Gay Lesbian Bisexual Alliance v. Sessions*, 930 F. Supp. 1492, 1495 (M.D. Ala. June 6, 1996).

In determining where a given rate falls within local ranges, fee awards are not designed to compensate a party for premium billing and premium level services. *Medrano v. Mi Colombia Bakery, Inc*., 11-23916-CIV, 2013 WL 1748403, at *2 (S.D. Fla. Jan. 10, 2013). "Even if a party chooses to employ counsel of unusual skill and experience, the court awards only the fee necessary to secure reasonably competent counsel ." *Orenshtyn v. Citrix Systems, Inc*., 558 F.Supp.2d 1251, 1257 (S.D.Fla.2007) (quoting *Yahoo Inc! v. Net Games, Inc*., 329 F.Supp.2d 1179, 1183 (N.D.Cal.2004)), vacated and remanded on other grounds, 341 F. App'x 621

(Fed.Cir.2009). "As a result, it is entirely appropriate for a court to reduce those rates to a more reasonable amount, reflective of what would be appropriate to secure **competent legal counsel in the relevant legal community**." *Medrano*, 2013 WL 1748403, at *FN2.

For cases filed in the Rome Division of the U.S. District Court for the Northern District of Georgia, the relevant legal market for determining a reasonable hourly rate is Rome, Georgia. See *Ewing v. Daystar Logistics, Inc*., 4:13-CV-0020-HLM, 2013 WL 12382357, at *4 (N.D. Ga. Oct. 23, 2013) (In an FLSA case, Judge Murphy specifically found that Rome was the relevant legal market and that "Plaintiffs have not demonstrated that no attorney in the Rome Division would be willing to take the case.").[1] Because the present case was filed in the Rome Division, Defendants contend that the relevant legal market rates in the Rome Division should apply to this case.

---

[1] Judge Murphy also made a finding in 2018 that Rome, Georgia was the relevant legal market in a federal trademark infringement case. See *Pergo (Europe) A.B. v. Stanley Black & Decker, Inc*., 4:16-CV-319-HLM, 2018 WL 3949746, at *7 (N.D. Ga. May 7, 2018). While comparing an FLSA case to a trademark infringement case is a bit like comparing apples to oranges, trademark cases can involve highly technical issues that require specialized legal counsel. But by the court finding that Rome was still the relevant legal market in a trademark case, it should help show that Rome Division attorneys have much more than just a pulse to them.

Admittedly, there have not been any FLSA fee dispute cases in the Rome Division since *Ewing*. However, there was a recent FLSA fee dispute case in the Newnan Division which is helpful for the present case at issue. In *Poole v. Meriwether Cty., Georgia*, 3:18-CV-56-TCB, 2019 WL 3757785, (N.D. Ga. June 21, 2019), the court found that the Newnan Division was the relevant legal community rather than the Northern District as a whole and further found that "Newnan is sufficiently distinct from the metro Atlanta legal market…." *Id*. at 2.[2] The reason why *Poole* is helpful to the case at hand is due to the similarities that both the Rome and Newnan Divisions share. While both divisions represent a smaller legal market than the Atlanta Division, both Rome and Newnan have a similar population size and are abutted by larger communities (Chattanooga and Atlanta verses Columbus and Atlanta).

Plaintiffs contend that Atlanta is the relevant legal market because, "the lack of competent FLSA attorneys in the Rome Division is readily apparent." To support this argument, Plaintiffs present a list of 48 Rome Division FLSA cases since January 2015. Plaintiffs argue that this list shows that only two cases have solely

---

[2] The *Poole* court went on to find that $300 per hour was a reasonable rate for an attorney with almost 20 years of experience in the Newnan area and further found a reasonable rate for a paralegal was $100 per hour. But because the attorney did not engage other, lower-billing attorneys in his firm (Morgan & Morgan) to handle some of the work, the attorney's rate was reduced to $225 per hour.

Rome Division attorneys representing plaintiffs and that the other cases involving an attorney in Dalton (Mr. McCown) are only due to a need for local counsel. But this argument fails to carry Plaintiffs' burden of showing that there are no competent attorneys in the entirety of Northwest Georgia who would be willing to represent plaintiffs in FLSA cases for two reasons.

First, presenting a list of only federal filed FLSA cases completely ignores the fact that FLSA cases can be brought and fully litigated in Georgia state courts. Second, the fact that attorney John McCown has appeared as counsel for FLSA plaintiffs in 22 of the 48 cited cases unequivocally shows that there is competent FLSA plaintiffs counsel in the Rome Division. For Plaintiffs in this case to simply assume that Mr. McCown is not an example of a competent attorney in the area is plainly unprofessional. Mr. McCown could simply enjoy working with his regular co-counsel out of Nashville and this assumption is supported by the numerous cases in the Eastern District of Tennessee where they work together. See *Green v. Yanfeng US Automotive Interior Systems, LLC*, 1:21-CV-00015 (filed January 26, 2021).

In rebuttal to Plaintiff's position, Defendants submit the declarations of Rome Division attorneys Mr. John Scott Husser, Mr. John F. Lee Niedrach, and Mr. Christopher Paul Twyman. (Said declarations are collectively attached hereto as "**Exhibit A**"). Each of these attorneys declare, under penalty of perjury, that they

and their firms are willing and able to ***competently represent*** plaintiffs in an FLSA cases. Thus, it is clear that Plaintiffs could have located competent local attorneys to take on their case, but instead Plaintiffs simply chose to go with an out of area firm.

Accordingly, Plaintiffs have failed to carry their burden of showing why a market rate other than where this case was filed is appropriate. Thus, the prevailing rate in Rome applies.

**2)   Rome Division Rates:**

Plaintiffs have not submitted any evidence for what the current prevailing market rate for legal services is in Rome. Based on the declarations of Mr. Husser, Mr. Niedrach, and Mr. Twyman, Defendants purpose the following rates (which, for the Court's convenience, includes Plaintiffs' full claimed hours and revised total billed):

| Name | Position (years of exp.) | Hourly Rate | Total Hours | Total Billed |
|------|--------------------------|-------------|-------------|--------------|
| C.R. Bridgers | Partner (18) | $ 300.00 | 19.8 | $ 5,940.00 |
| Mitchell Benjamin | Partner (18) | $ 300.00 | 21.43 | $ 6,429.00 |
| Matthew Herrington | Associate (7) | $ 200.00 | 47.7 | $ 9,540.00 |
| Jessica Sorrenti | Paralegal (20) | $ 85.00 | 143.92 | $ 12,233.20 |
| S. Toenes | Paralegal (10) | $ 80.00 | 10.98 | $ 878.40 |
| Kelsey Hyatt | Legal Assist. (1) | $ 40.00 | 2.95 | $ 118.00 |
| | | **TOTALS =** | **246.78** | **$ 35,138.60** |

These proposed rates are further supported by the recent holding in *Poole v. Meriwether Cty., Georgia*, 3:18-CV-56-TCB, 2019 WL 3757785, (N.D. Ga. June

21, 2019) ($300 per hour for an attorney with almost 20 years of experience in the Newnan area and a $100 per hour for a paralegal). It is also supported by Attorney John McCown's recent filing in *McRae v. Curbs Plus, Inc*., 4:20-cv-00076-MLB, Dkt. 19 (N.D. Ga. August 27, 2020) ("The attorney's fees paid to Plaintiff's counsel pursuant to this settlement amount to less than $300 per hour based on the number of hours Plaintiff's counsel has spent working on this case. Defendant does not challenge the reasonableness of Plaintiff's fees.").

## C.   <u>Reasonable Hours Expended:</u>

Having determined the reasonable hourly rates, the undersigned next addresses the reasonableness of the hours expended by the attorneys working on the case. As a general rule, attorneys must exercise what the Supreme Court has termed "billing judgment." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). This means that the attorneys "must exclude from their fee applications 'excessive, redundant, or otherwise unnecessary [hours], which are hours that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*." *Am. Civil Liberties Union of Ga*., 168 F.3d at 428 (emphasis in original). "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Id*. Importantly, "if fee

applicants do not exercise billing judgment, courts are obligated to do it for them." *ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). A court may not, however, do both. See *Id*. at 1351-1352 (explaining that "by requiring the district court to conduct either analysis instead of both, we ensure that the district court does not doubly-discount the requested hours"). In deciding between the two options available to the court, an hour-by-hour approach is sometimes preferable while at other times the "fee documentation can be so voluminous as to render an hour-by-hour review impractical." *Loranger v. Stierheim*, 10 F.3d 776, 783.

Defendants have made their specific objections to Plaintiffs' itemized billing report. These objections are attached hereto as **Exhibit B**.

### 1)   <u>Block Billing</u>

The majority of Defendants' challenges to Plaintiffs' billing entries is due to the inappropriate use of block billing. The Eleventh Circuit has acknowledged the problems created by block billing, as that sort of timekeeping "makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney

devoted to a particular task in [the] litigation." *ACLU v. Barnes*, 168 F.3d 423, 429 (11th Cir.1999)

To illustrate, Defendants highlight Ms. Sorrenti's 1.3-hour billing entry on 5/27/2020. See Dkt 99-2, p. 47.  Without indicating how much time was spent on each task, Ms. Sorrenti billed the following:

> *Emails to and from CRB; Discussions with MDB; emails to and from IT-Alan Dratch re: missing client docs; call to Dratch re: recovering lost docs; processing of docs located; review of Thomas' docs for production, created list for doc production and tasked SMT re: bates-stamping; processing and review of responses to ORRs and discussed with MDB; emails to and from MDB re: amending Complaint.*

This billing entry contains numerous non-recoverable tasks that are clearly clerical and administrative in nature such as calls and emails to the IT department for help locating missing documents and bate stamping docs. This billing entry also contains time which could be viewed as compensable time, in particular reviewing responses to open records requests (ORR). But because this fee entry was block billed, it is completely impossible for anyone to figure how much time recoverable versus non-recoverable. Assigning a value would be a complete guess.

While the Defendants do not doubt that opposing counsel worked in good faith, the Court must be able to verify the work incurred before it can approve payment for the time incurred. Because of the frequent use block billing by Plaintiffs', however,

it is impossible for anyone "to ascertain how much time was spent on each task", much less separate out clerical work from that which is customarily done by attorneys. See *Dial HD, Inc. v. ClearOne Commc'ns, Inc*., 536 F. App'x 927, 931 (11th Cir. 2013).

Block billing further makes it impossible for Attorney Bridgers to properly exercise billing judgment. Many of the items that Mr. Bridgers reduced or "no charged" are part of a larger block billed fee entry. Hemm 8/13/2019 entry for J. Sorrentti, Dkt 99-2, p. 23 (0.3 hrs reduced from a larger 1.5-hour entry for drafting retainer agreement). By block billing, it is a complete guess as to how long Ms. Sorrentti took to do a clerical/administrative task. Compare 8/13/2019 entry for J. Sorrentti, Dkt 99-2, p. 23 (0.3 hrs reduced for drafting retainer agreement) with 8/15/2019 entry for J. Sorrentti, Dkt 99-2, p. 24 (0.4 hrs reduced for drafting a retainer agreement).

### 2)   <u>**Clerical or Administrative Time:**</u>

Clerical or secretarial tasks may not be billed to an opposing party. *Herrmann v. Gutterguard, Inc*., 1:04-CV-0365-JEC, 2009 WL 10671021, at *5 (N.D. Ga. Mar. 12, 2009); citing *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989)("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"). "The distinction between those tasks that are billable and those that are not

... turns on whether a non-lawyer would lack the training, experience, and judgment to complete the task at issue." *Lewis v. Colvin*, 1:15-CV-1483-WSD, 2017 WL 2350211, at *1 (N.D. Ga. May 31, 2017).

The following is a non-exhaustive list of clerical activities as designated by 11th Circuit district courts:

- Sending demand letters, conferring with client on payment options, bate stamping documents, and saving emails and changing their formant. See *Carroll v. ATA Retail Servs., Inc*., 1:14-CV-00747-ELR, 2017 WL 11113320, at *17 (N.D. Ga. July 25, 2017), aff'd, 747 Fed. Appx. 762 (11th Cir. 2018).

- "Non-recoverable tasks include time billed for: setup of a file, calendaring deadlines, receiving, reviewing, and indexing documents, sending or receiving emails with documents attached, preparing civil cover sheets and summons, receiving and indexing certified mail receipts, e-filing documents with the Court, receiving and indexing those documents, mailing and telefaxing correspondence, making calls to clients, obtaining pleadings from the court's database, printing documents, miscellaneous scanning of documents, etc. *Nail v. Shipp*, CV 17-00195-KD-B, 2020 WL

1670459, at *2 (S.D. Ala. Apr. 3, 2020) (analyzing attorneys fees in an

FLSA case).

Again to illustrate, Defendants highlight Ms. Sorrenti's 3.5-hour billing entry on

6/5/2020. See Dkt 99-2, p. 51.  Without indicating how much time was spent on each

task, Ms. Sorrenti billed the following:

Call from Elliott re: her additional documents; emails to and from Elliott; Emails

to and from Spurlock; revised Spurlock and Thomas' responses to include their edits

and finalized; finalized Elliott's responses all discovery responses; OCR; redact and

bates Elliott's docs; finalized Elliott's responses to RFP to include bates numbers;

burned responsive docs to a disk for production (x2); prepared COS and filed with

Court; processing; Prepared packages to opposing counsel (x2); email to opposing

counsel.

This block billed entry clearly contains non-recoverable clerical items such as

OCR'ing documents, redacting and Bates stamping documents, burning document

production to a CD and then preparing document production to be mailed out, filing

certificates of service and then emailing those out. This is just one example of

clerical time that is being billed to Defendants, yet should have been reduced as firm

overhead (to the extent possible due to being block billed).

### 3)   <u>Excessive Time:</u>

The Court should not be convinced by Mr. Bridger's statement that his firm exercised proper billing judgment in every single billing entry of this case. Mr. Bridger's credibility is severally undermined by the fact that Plaintiffs seek compensation for the time that Mr. Bridgers spent doing administrative work to **eliminate excess hours**. Mr. Bridgers spent 2.0 hours (totaling $849.76)[3] to reduce fees by $1,964.58 (resulting in a "net savings" of only $1,114.82). See *Milie v. City of Savannah*, 4:18-CV-117, 2020 WL 4041118, at *9 (S.D. Ga. July 16, 2020) ("First, Coploff's credibility is undermined by the fact that Plaintiffs, ironically, seek compensation for the time that Coploff spent eliminating excess hours.").

While Defendants allege excessive time through Plaintiffs' billing history, the most egregious example of excessive billing is in the 20.2 hours that Plaintiffs counsel spent drafting their fee motion, brief, and supporting declarations (and which does not include the list of Rome Division FLSA cases, which was compiled on 2/16/21 through 2/24/2021. See Dkt 99-2, p. 62.).

In comparing Plaintiffs' present fee motion with the one that they filed in *Ronald Kelly v. BNFocus 3D Trucking, LLC and Jerry Graves*, 1:20-cv-2781-WMR, Dkt. 18 (N.D. Ga July 24, 2020), it becomes readily apparent that large portions of the

---

[3] See fee entries for Bridgers on 3/24/2021 and 3/25/2021. Dkt 99-2, p. 66.

"Argument and Citations of Authority" of the present case brief are copied and pasted from the *Kelly* brief. This similarity also holds true for the Declaration of Mr. Herrington, which was submitted as an exhibit in the *Kelly* case. By comparison, Plaintiffs counsel in the *Kelly* case only billed 7.4 hours to draft their fee motion and supporting documents. The Declaration of Charles R. Bridgers submitted in the present action also contains large amounts of reuse from other cases. Compare *Ardra Harris v. Americanwork LLC*, 1:20-cv-00094-WLS, Dkt. 16-2 (M.D. Ga January 25, 2021).

While Defendants do not fault Plaintiffs' counsel for reusing arguments and other documents that they routinely submit, the fact that items were reused from case to case should be examined against the total amount of time billed to prepare the fee motion in this case. Because Plaintiffs' counsel was not reinventing the wheel (to a certain extent), billing for 20.2 hours seems quite excessive.

### 4)   <u>Recommended Adjustment:</u>

In light of the voluminous fee documentation now before the Court (Plaintiffs' fee petition and supporting documents amount to over 150 pages), Defendants believe that an hour-by-hour analysis of Defendants' objections in this case would be impractical and a waste of judicial resources. Therefore, to address the billing ineffectiveness discussed above, Defendants recommend that the Court make an

across-the-board 30% reduction to the fees requested. See *Milie v. City of Savannah,* 4:18-CV-117, 2020 WL 4041118, at *10 (S.D. Ga. July 16, 2020) (finding a 30% reduction to be appropriate in an FLSA case); *Rubenstein v. Florida Bar*, 14-CV-20786, 2015 WL 1470633, at *4-6 (S.D. Fla. Mar. 31, 2015) (recommending a 30% reduction to counsel's hours for use of block billing in an FLSA case); *Padurjan v. Aventura Limousine & Transp. Service, Inc*., 441 Fed. Appx. 684, 687 (11th Cir. 2011) (50% reduction in an FLSA case); *Woods v. On Baldwin Pond, LLC*, 2016 WL 7325546, *9 (M.D. Fla. Apr. 29, 2016) (90% reduction to fees in an FLSA case).

If the Court were to apply a 30 percent downward adjustment to the lodestar amount to account for Plaintiffs' billing practices, the net amount of reasonable attorneys' fees for this case would either be **$42,132.65** (at Plaintiffs' claimed Atlanta rates and which would still be 100 percent greater than the total amount Plaintiffs recovered in the settlement) or **$24,597.02** (at Rome rates).

### D.   Further Adjustments to The Lodestar:

After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained. A lodestar figure "is itself strongly presumed to be reasonable." *Resolution Trust Corp. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1150 (11th Cir.1993). However, the court "has discretion to reduce an award to account

for situations where the lodestar figure is unreasonable in light of the limited success obtained." *Martinez*, 579 Fed. Appx. at 715.

The final calculation of the lodestar award may be informed by the "*Johnson* factors" as set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the services properly; (4) preclusion of other employment due to acceptance of the case; (5) the customary fee in such cases; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount at stake and results achieved; (9) experience, reputation, and ability of the attorney; (10) "undesirability" of the case; (11) nature and length of professional relationship with the client; and (12) awards in similar cases.

*Florida Suncoast Villas, Inc. v. United States*, 776 F.2d 974, 975 n.2 (11th Cir. 1985); citing *Johnson*, 488 F.2d at 717-19).

While Plaintiffs' attorneys each have substantial legal experience and impressive credentials, the skills needed in this case fall within the usual realm of a labor law practice and do not warrant a higher hourly rate. Although this case was zealously litigated and involved motions to dismiss, the legal issues raised were not particularly novel, complex, or difficult. This case only involved three (3) plaintiffs and the Complaint did not seek any sort of class certification. The Parties only

exchanged a first set of discovery requests and no depositions were taken in this case.

Additionally, the Court should be unpersuaded by the previously approved FLSA settlements that included legal fees for the same counsel at the rate requested here. Those cases are distinguishable in that the attorneys' fees and costs were amicably resolved as part of a settlement of the FLSA. Rather than having to conduct an in-in-depth lodestar analysis to determine counsel's hourly rates, the court only had to consider the reasonableness of counsel's legal fees to assure both that counsel was compensated adequately and that no conflict of interest taints the amount a wronged employee recovers under a settlement agreement. Therefore, the Court should be unpersuaded to increase Plaintiffs' Counsel's fees based on prior awards. See, e.g., *Snyder v. A1 Prop. Pres., Inc.*, No. 8:12-CIV-2014-T-17, 2013 WL 3155058, at *2 (M.D. Fla. June 19, 2013) (noting that "uncontested awards are not convincing evidence of reasonable market rates")

## E.   **Plaintiffs' Litigation Expenses Are Recoverable:**

Plaintiffs seek reimbursement for their litigation expenses in the amount of $760.00, which arise from the filing fee and service costs. Defendants have no objection to this amount as these costs are the type of expenses which are recoverable by the prevailing party in an FLSA action.

### III.  <u>CONCLUSION</u>

The Court should deny, in large part, Motion to Motion for Attorney's Fees and Costs of Litigation and reduce the award of fees to Plaintiffs' counsel as argued above.

Respectfully submitted this 14th day of April 2021.

COX BYINGTON TWYMAN LLP

<u>/s/ Christopher P. Twyman</u>
CHRISTOPHER P. TWYMAN
Georgia Bar No. 720660
M. WEST EVANS
Georgia Bar No. 131714
*Attorneys for the Defendants*

711 Broad Street
Rome, Georgia 30161
(706) 291-2002 Office
(706) 291-6242 Fax
chris.twyman@cbtjlaw.com
west.evans@cbtjlaw.com

### <u>CERTIFICATE OF FONT SIZE</u>

Pursuant to LR 5.1(C)(3), NDGa, the undersigned counsel certifies that this document has been prepared with 14-point Times New Roman font.

This 14th day of April 2021.

<u>/s/ Christopher P. Twyman</u>
CHRISTOPHER P. TWYMAN

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS OF LITIGATION** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following opposing counsel and all parties of interest:

**Charles R. Bridgers, Esq.**
**Mitchell Douglas Benjamin, Esq.**
**Matthew W. Herrington, Esq.**
Delong Caldwell Bridgers Fitzpatrick & Benjamin, LLC
101 Marietta Street NW
Suite 2650
Atlanta, GA 30303
charlesbridgers@dcbflegal.com
benjamin@dcbflegal.com
matthew.herrington@dcbflegal.com
*Counsel for Plaintiffs*

This 14th day of April 2021.

/s/ Christopher P. Twyman
CHRISTOPHER P. TWYMAN
Georgia Bar No. 720660